RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

DAWN WRINN,

|  |  |  |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:16-cv-1011-MHT-GMB |
| vs. | ) | |
| | ) | **JURY DEMAND** |
| THE CITY OF DOTHAN, ALABAMA, | ) | |
| Defendant. | | |

## COMPLAINT

## I. JURISDICTION

1. This is a suit for relief from disability, age and/or gender discrimination instituted pursuant to the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.,* the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Dawn Wrinn ("Plaintiff") timely filed a discrimination charge against defendant the City of Dothan, Alabama ("Defendant") with the Equal Employment Opportunity Commission within 180 days after the last act of

discriminatory treatment.  Plaintiff has further filed this suit within 90 days after receipt of her right-to-sue letter issued from the EEOC.

## II.  PARTIES

3.  Plaintiff is a citizen of the United States over the age of nineteen and a resident of Ooltewah, Tennessee.

4.  Defendant is a municipal corporation located in Houston County, Alabama.  It is and was at all times relevant to this complaint an employer as contemplated under the ADA, Title VII, and the ADEA.

## III.  STATEMENT OF FACTS

5.  Plaintiff is female.

6.  Plaintiff was born in 1958.

7. In or about September of 1990, Plaintiff became employed by Defendant.

8.  Other than three months in 2000 when Plaintiff served as administrative assistant to the Municipal Court Judge, she worked in the Planning & Development Department.

9.  Plaintiff was promoted to Planner in or about May of 2000 and reclassified as Planner II in or about 2014.

10.  Todd McDonald is male and became the Planning Department Director in 2006.

11. In December of 2012, Plaintiff was diagnosed with breast cancer.

12. In early 2013, Plaintiff was off work for a few weeks to have surgery for her cancer.

13. Plaintiff thereafter had radiation treatments through the spring.

14. After that, Plaintiff went to Chicago for checkups for her cancer every six months.

15. On these occasions, Plaintiff would miss about three days of work.

16. After Plaintiff returned from leave due to her cancer, McDonald began commenting that she would be eligible to retire in a couple of years.

17. McDonald continued to make comments about Plaintiff retiring for the remainder of her employment.

18. In or about August of 2013, Frank Breaux, who is male, was hired in as another Planner.

19. In or about September of 2014, McDonald gave Plaintiff an unfounded disciplinary action.

20. In or about February of 2015, Breaux was promoted to Senior Planner and became Plaintiff's supervisor.

21. After Breaux got promoted, he would make comments about Plaintiff missing work when she would make the trips to Chicago for her cancer treatments.

22. In March and April of 2015, Breaux and McDonald gave Plaintiff unfounded disciplinary actions.

23. In or about July of 2015, Plaintiff's work load was reduced and given to Breaux.

24. In or about September of 2015, Plaintiff became eligible to retire.

25. In the fall of 2015, Plaintiff overheard Breaux tell McDonald that Plaintiff was "losing her hair."

26. On or about October 21, 2015, Plaintiff was called to a meeting with Breaux, McDonald, and Delvick McKay, Defendant's Personnel Director.

27. McDonald stated that Defendant's policy provided that an employee be terminated after receiving four disciplinary actions in one year.

28. Plaintiff was not in that situation.

29. Nevertheless, McKay stated that Plaintiff could avoid the possibility of termination by retiring.

30. Plaintiff stated that she had no plans to retire.

31. The next day, McDonald stated that Plaintiff was forcing him to "instigate termination procedures."

4

32. McDonald said that, in a termination proceeding, he would make a decision at least within three days of the hearing but that he expected he would have a decision the morning after the hearing.

33. McDonald added that, if Plaintiff retired immediately, Defendant would give her a good recommendation.

34. McDonald also said that, if Plaintiff were terminated, she would not have a positive reference from Defendant to look for another job.

35. On or about October 22, 2015, Plaintiff filed a grievance with Personnel Director McKay, wherein she complained about McDonald pressuring her to retire for the last two years.

36. On or about November 6, 2015, Plaintiff was placed on a Performance Improvement Plan, again for unfounded reasons.

37. On or about January 26, 2016, Plaintiff was given a disciplinary action which stated that the discipline would be termination.

38. The disciplinary action was unfounded, but, even if not, termination was not the proper discipline under Defendant's policies.

39. Plaintiff was also given a notice of determination hearing.

40. The unfounded disciplinary actions and pressure for Plaintiff to retire forced her to seek medical treatment for stress and anxiety.

5

41. On or about February 4, 2016, Plaintiff attended the determination hearing.

42. Present were McDonald, Breaux, Darryl Mathews (Defendant's EEO Officer), and Kris Knight (Defendant's Personnel Department Analyst).

43. Afterward, Knight told Plaintiff that McDonald could make a decision by that afternoon.

44. Knight said that Plaintiff would lose her health insurance if she were terminated and that the cost of keeping it under COBRA would be very expensive.

45. Knight further said that, if Plaintiff were to retire, she could keep her health insurance and benefits.

46. Knight gave Plaintiff an application for retirement and told her that, due to state requirements, Plaintiff's retirement date would be April 1.

47. Plaintiff called her husband, told him about what had happened, and he came to City Hall.

48. Plaintiff's husband asked Knight about Plaintiff's options.

49. Knight told Plaintiff and her husband to talk to McKay.

50. Plaintiff and her husband went to McKay, and he said that McDonald had given Plaintiff the choice of retiring or face termination.

6

51. Given the history of what Plaintiff had been through, there was little doubt in her mind that McDonald was going to terminate her.

52. Mindful of what McDonald had said about having a determination made by the morning after the hearing and Knight's comment that he could decide by that afternoon, Plaintiff felt she had little time to make a decision.

53. Plaintiff was then still undergoing cancer treatment and her husband, who was also on Plaintiff's health insurance, was also going through significant health issues that required continued health insurance coverage.

54. Plaintiff and her husband could not lose their health insurance.

55. Plaintiff knew that, if she were terminated, she and her husband could not afford to pay for health insurance through COBRA.

56. Plaintiff felt that she had no alternative other than to retire so that she would not lose health insurance for her and her husband.

57. Consequently, Plaintiff submitted a hand-written notice of retirement, wherein she stated that she was retiring due to the threat of loss of health insurance from termination.

58. The next morning, on or about February 5, 2016, Plaintiff returned to work and submitted her official retirement application to Defendant's personnel department.   59. Plaintiff then went to her department to report to work.

60. Plaintiff told McDonald that she would continue to work until her retirement date of April 1.

61. McDonald asked Plaintiff what she expected to do, and she told him her job.

62. McDonald said that he had reassigned all of Plaintiff's work and that he did not want her there.

63. McDonald told Plaintiff to leave and to talk to personnel about how she would be paid until her retirement date.

64. Plaintiff was replaced with a new hire who is male and substantially younger than she.

65. Upon information and belief, the person who Plaintiff was not disabled.

## IV. CAUSES OF ACTION

### COUNT I

### ADA

66. Paragraphs 1-65 are incorporated herein.

67. Plaintiff's breast cancer constituted a physical impairment that substantially limited her with respect to the major life activity of normal cell growth.

68. During the relevant events set forth above, Plaintiff further had a record of that impairment.

69. Plaintiff was disabled under the ADA during the relevant events set forth above.

70. Plaintiff was a qualified individual able to perform the essential functions of her position.

71. Defendant violated Plaintiff's rights under the ADA by constructively terminating her employment because of her disability.

72. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing Plaintiff and placing her in the position she would have

occupied in the absence of discrimination (or front-pay), providing back-pay and lost benefits with interest, ordering Defendant to pay compensatory and punitive damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## ADEA

73. Paragraphs 1-65 above are incorporated by reference.

74. Defendant violated Plaintiff's rights under the ADEA by constructively terminating her because of her age.

75. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and other benefits.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's employment act as described herein violated the ADEA;

10

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violation of Plaintiff's rights under the ADEA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing her and placing her in the position she would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing back-pay with interest and restoration of lost benefits and perquisites of employment, ordering Defendant to pay liquidated damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv)  That the Court award such other available legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT III

## TITLE VII

76.  Paragraphs 1-65 above are incorporated by reference.

77.  Defendant violated Plaintiff's rights under Title VII by constructively terminating her employment because of her gender.

11

78.   As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's act as described herein violated Title VII;

(ii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing Plaintiff and placing her in the position she would have occupied in the absence of Defendant's violation of Plaintiff's rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment with interest, ordering Defendant to pay compensatory and punitive damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor;

(iii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate Title VII; and

12

(iv) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

Respectfully submitted,

Dawn Wrinn, *Pro Se* Plaintiff
8567 Skybrook Dr.
Ooltewah, TN 37363-1438
(423) 910-0899

Plaintiff requests trial by struck jury.

Dawn Wrinn, *Pro Se* Plaintiff

Defendant's Address:
The City of Dothan
c/o Tammy Danner, City Clerk
126 N. Saint Andrews St.
Room 213
Dothan, AL 36303

13